```
1                    UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF TEXAS
2                        SAN ANTONIO DIVISION

3    UNITED STATES OF AMERICA,      )
          Plaintiff,                )
4                                   ) No. SA:08-CR-301
            vs.                     )
5                                   ) San Antonio, Texas
     STEVEN LYNN MOUTON,            ) March 17, 2010
6         Defendant.                )
     ------------------------------

7                    TRANSCRIPT OF SENTENCING HEARING
8               BEFORE THE HONORABLE XAVIER RODRIGUEZ
                    UNITED STATES DISTRICT JUDGE
9
     A P P E A R A N C E S:
10
     FOR THE PLAINTIFF:
11
     United States Attorney's Office
12   Ms. Tracy Thompson Braun
     Ms. Sarah Wannarka
13   601 N.W. Loop 410, Suite 600
     San Antonio, Texas 78216
14
     FOR THE DEFENDANT:
15
     Mr. Karl A. Basile
16   Attorney at Law
     Greatview Building
17   8207 Callaghan Road, Suite 100
     San Antonio, Texas 78230
18
     COURT REPORTER:
19
     Karl H. Myers, CSR, RMR, CRR
20   Official Court Reporter
     655 E. Durango Blvd., Rm. 315
21   San Antonio, Texas 78206
     Telephone:  (210) 212-8114
22   Email:   karlcsr@yahoo.com

23   Proceedings reported by stenotype, transcript produced by
     computer-aided transcription.
24

25
```

```
 1                    (March 17, 2010, defendant present.)

 2               THE COURT:  Thank you.  Please be seated.

 3               08-CR-301, United States of America versus Steven

 4    Lynn Mouton.

 5               MS. THOMPSON:  Good afternoon, Your Honor.  Tracy

 6    Thompson and Sarah Wannarka appearing on behalf of the United

 7    States.

 8               MR. BASILE:  Good afternoon, Your Honor.  Karl

 9    Basile on behalf of Mr. Mouton.

10               THE COURT:  There are objections to the presentence

11    report.  Let me hear those objections first.  There are

12    objections to paragraphs 24, 35, and 37 of the report, arguing

13    that the base offense level is incorrectly -- or the Total

14    Offense Level is incorrectly scored.

15               MR. BASILE:  That is correct, Your Honor.

16               THE COURT:  How is it incorrectly scored?

17               MR. BASILE:  Well, my objections would be for the

18    addition of the four points, Your Honor, and it is added for

19    the sadistic, masochistic conduct, and I briefed that in a

20    little more detail in a sentencing memo I filed yesterday.  I

21    apologize for the late filing.  It is in response to the

22    government's from a week ago.

23               There is -- Your Honor, there is some case law out

24    of the Fifth Circuit --

25               THE REPORTER:  Counsel, Counsel, Counsel, Counsel,
```

1      you need to slow down.

2              MR. BASILE:  There is some case law out of the Fifth

3      Circuit that does talk about different definitions than I put

4      in from Black's law dictionary, so that is why in addition to

5      that, I added the objections based upon, and it is my opinion

6      that he is being double counted, because there are already

7      points added because there is a child involved and already

8      points added because there was a sexual act involved.

9              And if that is the basis for this sadistic,

10     masochistic addition of four points, I would present to the

11     Court that would be double points added for the same conduct.

12     So in addition to the objection, under the definition, that it

13     doesn't show, in my opinion, what would be as far as bondage

14     or anything that would include the -- I think under that

15     separate provision that it would be double points added for

16     that.

17             The other objection I have, Your Honor, is for

18     not -- not the acceptance of responsibility.  The issue in

19     this case, which was briefed to the Judge and to the Court,

20     was a legal issue based upon the evidence as presented at the

21     trial.

22             Mr. Mouton, in the beginning, when he met with the

23     agents, did not dispute the evidence that was there, did not

24     dispute the pictures.  It was all a legal basis as part of,

25     like I said, our motion for judgment and motion for new trial.

1          And I think that on that issue, Your Honor, he

2     should be entitled to acceptance, because he took it to a

3     trial for an issue that still may need to be decided.  I have

4     not seen a Fifth Circuit case on that issue yet.  Even though

5     other circuits have ruled against us, I have not seen the

6     Fifth Circuit actually rule on that legal issue yet, Your

7     Honor.

8          So for that basis, I would ask the Court to give him

9     his acceptance of responsibility.

10         THE COURT:  Any response?

11         MS. BRAUN:  Your Honor, the government sentencing

12    memorandum covers the sadistic enhancement.  It is not just

13    that a sexual act was committed with a child, but the sadistic

14    enhancement applies because of the specific acts done to the

15    child.  The fact that an adult penis was inserted into this

16    little girl's vagina means the sadistic enhancement applies

17    under Lyckman.

18         In addition, because he inserted a foreign object

19    into this child's vagina, the sadistic enhancement applies

20    under, I believe, U.S. v. Canada.  Fifth Circuit case law is

21    clear that that application should be given in this case.

22         With regard to acceptance of responsibility, the

23    government feels strongly he shouldn't get it.  He has a

24    constitutional right to a jury trial.  He exercised that

25    right.  He is not being punished.

1           He doesn't have a constitutional right to acceptance

2      of responsibility.  He could have accepted responsibility for

3      producing child pornography.  He chose not to.  Not only did

4      he not accept responsibility, but now he wants to take credit

5      because the victim didn't come in and testify.

6           The government's decision not to call the victim as

7      a witness in this case and put additional trauma on her should

8      in no way reflect any good will on behalf of the defendant.

9      He has not accepted responsibility for using this child to

10     produce child pornography and, therefore, that enhancement

11     should not apply in this case.

12          THE COURT:  Yes.  With regard to paragraph 28, the

13     enhancement of four levels because of material portraying

14     sadistic or masochistic conduct, I have reviewed the

15     sentencing guidelines, the commentary.

16          The commentary is clear that penetration of a young

17     child by an adult male warrants a sadistic conduct increase.

18     And the Fifth Circuit in Lyckman, L-y-c-k-m-a-n, 235 F 3d 234,

19     Fifth Circuit, 2000, confirms that.  So that objection is

20     noted and overruled.

21          With regard to paragraph 34, that is the denial of

22     acceptance of responsibility.  With regard to acceptance of

23     responsibility, the commentary to Section 3-E-1.1 indicates

24     that an acceptance is required on all counts.

25          The defendant refused to admit guilt to Count 2.  If

1    it was just a legal theory that he was going to try to pursue,

2    the defendant could have, but chose not to take a plea,

3    reserving his rights of appeal and failed to do so.

4          And then in the alternative, acceptance of

5    responsibility is also denied, because throughout the trial,

6    and at no time thereafter, has Mr. Mouton accepted

7    responsibility for his actions.

8          His portrayal of his acts against his adopted

9    daughter was shockingly portrayed as sort of lovingly,

10   fatherly acts, and he has never backed away from that

11   position.  So the acceptance of responsibility is denied.

12         Any other objections?

13         MR. BASILE:  No objections to the guideline points,

14   Your Honor.

15         THE COURT:  With that, Mr. Mouton, you are at a

16   Criminal History Category II and a Total Offense Level of 43.

17   Statutorily, the Court is required to sentence you to no less

18   than 15 years and no more than 30 years, 3-0.

19         On Count 2, the Court may not sentence you to any

20   more than ten years.  Supervised release on Counts 1 and

21   2 recommend five years to life.  A fine is recommended of

22   $25,000 to $250,000, and there is a special assessment of $100

23   on each count, for a total of $200.

24         And we will now turn to allocution.  Counsel.

25         MR. BASILE:  Your Honor, in regards to that, I will

1      refer the Court also to the sentencing memo that I filed.

2              In addition, I would say to the Court that even

3      though the Court has stated he has -- in my opinion, Mr.

4      Mouton has accepted what he did.  He did accept that right

5      away when the FBI talked to him that day.

6              Further, in addition to what is in there,

7      Mr. Mouton's whole life has not been including that.  As the

8      Court can see, he has served this country in the military.  He

9      has gone to school, education.  He was an educated person, was

10     actually working in the Health-Science Center working in the

11     biology lab doing research that would help the general public.

12     So he has done a lot of good for society and not just the

13     instances that we are here before the Court.

14              He did provide financially for his family, and as

15     the Court knows, there was also a home that was seized, so he

16     was a good provider for the family financially and was able to

17     do that.

18              And on those bases, Your Honor, I would ask the

19     Court, as I requested in the sentencing memo, to sentence him

20     within the range of the 15 to 30 years, but I would ask the

21     Court to do that between 15 and 20 years, Your Honor.

22              He would then be 70-something years old when he is

23     released.  He is 57 years old at this time.  He would not be,

24     at that time, in my opinion, a threat to society or a threat

25     to anybody else at that age.

1          As long as he gets the treatment and counseling that

2    is provided through the Bureau of Prisons, I think at that

3    time, Your Honor, he could become a productive citizen and

4    would not be a threat.

5          THE COURT:  Thank you, Counsel.

6          Mr. Mouton, would you like to say anything?

7          THE DEFENDANT:  Yes, sir.  Can I read?

8          THE COURT:  Yes.

9          THE DEFENDANT:  I am out of my element here.  As he

10   said, I have been a productive citizen.  I have actually made

11   presentations to members of the World Health Organization.  I

12   have done presentations all over the United States for

13   different scientific conventions and what have you, and I have

14   done my best to do my best.

15         Your Honor, I know I screwed up in this case, and

16   every hour and every day for the last 23 months, I have

17   mentally flogged myself and asked myself, what the hell was I

18   doing?  What was I thinking?  And I have no answer for that.

19   I wish I did.

20         But there is not even a day or an hour that goes by

21   that I wish I could go back and do it again and correct what I

22   did.  And I don't mean coverup.  I mean not do what I did.  It

23   was inexcusable.

24         I miss my wife and my daughter more than life

25   itself.  They are the most important people to me, and they

1   are the two that I let down, worse than anything, and they are

2   the ones I wish I could apologize to, and I am begging their

3   forgiveness and, unfortunately, they are not here, and they

4   can't be here, I guess.

5           In all of this, I haven't really been given a chance

6   to attempt to redeem myself, present Steve Mouton in any

7   positive way.  Everybody has just seen this incarceration

8   (sic) of what I have done, to present me as who I am, and that

9   is not who I am.

10          I haven't had anyone really on my side, other than

11  Mr. Basile here.  But before this, I haven't had any -- I

12  considered myself as a winner and did everything in my power

13  possible to include my family in my winner circle, and I just

14  want you to know how positive of a person I had been in the

15  past.

16          I earned awards and accrued good pay raises for what

17  I did and haven't -- I have had an excellent relationship with

18  and respect of my coworkers and my scientific colleagues.  I

19  worked very hard to provide for my family and gave them the

20  best that I could.

21          As Mr. Basile mentioned, I had a wonderful

22  relationship with my daughter for the ten and a half years she

23  was with me.  Most fathers would envy the relationship I had.

24  Like I said, that was just a small moment in time of my

25  screwup of what I did.

1          We were very close, and we did so much together.  We

2     did everything, played tennis, computer games, Scrabble,

3     Monopoly, lots of board games, worked on all of her school

4     projects together, rode bicycles.

5          My family went to museums, did a lot of theatre,

6     went to the zoo, Biological Gardens.  We just got into playing

7     music together.  I was a trumpet player in the symphony in

8     Midland, Odessa, and I was getting my lip back in shape and

9     she was playing violin, and we were starting to put our duets

10     together, and we were going to -- we were going to start

11     calling ourselves Honk and Chink, just kind of a thing we came

12     up with.

13          She was very smart and very fun and very well

14     educated, and we matched wits a lot.  She was at a higher

15     level than most girls her age.  She would help me cook.  At

16     the end of the day, we would sit down and watch TV, and she

17     would crawl up on my lap and we would watch TV together.

18          Amanda always knew she could come to me with her

19     problems, no matter how large or small or how embarrassing.  I

20     denied her absolutely nothing.  She even used to write stories

21     about me.  One time, she put together a PowerPoint

22     presentation about me, showed, you know, bragged about how

23     cool her daddy was and how much I loved her and how much she

24     appreciated what I have done for her.

25          As it happens, they are on the same computer that

1      they confiscated, where they resurrected those old, deleted

2      pictures that I had no use for.  I had deleted them and

3      thought I had made them go away.

4              I had never viewed them.  They were just strictly

5      just data in the computer.  I had hoped they were gone.  I had

6      no use for that stuff anymore.  They had never been viewed or

7      printed or never transferred to any other media source or any

8      other type of media or produced in any way.  They were dead

9      and gone.

10             I had many thousands and I mean many thousands of

11     good, wholesome, irreplaceable pictures on my computer and in

12     photo albums.  I considered myself a pretty decent amateur

13     photographer.  And the deleted pictures, like I said,

14     represented a tiny speck of all of the pictures that I had at

15     home.

16             I mean, like I said, there were many thousands in

17     there, just a few of these pictures, that they were, once

18     again, deleted.

19             And, yes, there is no excuse for the few that I had,

20     but they were destroyed, in my opinion; I had attempted to

21     make them go away.  But there is definitely nothing that could

22     be considered anywhere near interstate or commerce

23     trafficking.

24             Your Honor, I have never had any trouble with the

25     law before this.  I have always considered myself an

1    above-average citizen, that I have avoided any confrontations,

2    other than speeding tickets.

3              I have always gone out of my way to not do something

4    illegal and try to form a good-guy image for my daughter,

5    doing the right things, so she would grow up and do the right

6    thing.

7              I admire and respect many cultures, and being we

8    were a multicultural family, we did a lot of outings together.

9    My wife was Hispanic and my daughter Chinese, and we would try

10   to do all of the cultural things together to educate my

11   daughter on world views and world things and world activities.

12             I have always tried to maintain a positive outlook,

13   to the point that my wife used to call me the ultimate

14   optimist.  She said it sometimes in a positive way and

15   sometimes in a negative way, because it seems like I was never

16   negative.

17             My daughter was always a straight A student, got

18   good grades.  She sat first chair violin in her junior high

19   orchestra, and these weren't any accidents.  This was a lot of

20   input from the parents, especially me, and we spent a lot of

21   quality time.

22             In addition, on my behalf, I was doing a lot of

23   volunteer work.  I was working volunteer work for a wildlife

24   rescue and rehabilitation in Kendalia, which is just north of

25   Boerne, and I was also volunteering at the Rainbow Alpaca

1    Farms in Boerne, and I was doing that right up to the time

2    that I was arrested.

3              I have never done anything to intentionally hurt

4    anyone, especially my daughter.  Ms. Braun has presented me in

5    a very negative way and talked about me like I am evil -- and

6    I am not.  She knows nothing about my past and what I have

7    done, as far as the positive outlook on life and things.

8              Like I said, my -- where I screwed up, it was not

9    intentionally to hurt anyone.  In fact, I placed my wife and

10   my daughter on a pedestal and pretty much did everything in my

11   power to make sure they were happy, and my daughter was very,

12   very happy with me as a father.

13             My wife, as well as her friends, we would go to

14   parties and get-togethers, bragged about me as a person, and

15   my wife would tell them stories about my accomplishments as a

16   husband and a father.  And I hope you will take these into

17   consideration.

18             I understand there are some letters also on my

19   behalf.  I am not sure what, but -- but if you were to set my

20   daughter down, she would tell you that she could probably come

21   up with a million good things that she could tell about me, if

22   you would ask her.

23             I am an intelligent, well-rounded person.  I

24   consider myself a pretty good craftsman.  I build and I

25   actually constructed a couple of houses, built them by myself,

1    and I still have a lot to give.

2          In short, Your Honor, I am asking for leniency, as

3    far as you can go.  I am not saying I shouldn't be punished.

4    I know I should be punished, but my God, I have already paid

5    the ultimate price.  I have lost my home.  I have lost my

6    wife.

7          I had a houseful of heirlooms and treasures, four

8    generations' worth, that I have no idea where they are right

9    now.  I don't know what happened to them.  So I have lost all

10   of that, but worst of all, I have lost my right to see and be

11   with my daughter, and that hurts more than anything.

12         THE COURT:  Anything from the government?

13         THE DEFENDANT:  I will always --

14         THE COURT:  I'm sorry.  I thought you were finished.

15         THE DEFENDANT:  I will always be her daddy.  And she

16   will always be my baby doll, which was my nickname for her.

17         I don't know what you can do as far as my

18   sentencing, but some of the things I thought about, and I

19   don't know if it would be of precedence or not, but

20   considering something like an organ donation or organ

21   transplant or working for some of these other countries that

22   have been devastated by earthquakes and floods and what have

23   you, if I could do some sort of work like that.  I don't know

24   what -- or even like a civilian tour of duty in Afghanistan or

25   Iraq.  I just don't want to be locked up anymore.

1          THE COURT:  Anything further?

2          THE DEFENDANT:  No.

3          MR. BASILE:  Your Honor --

4          THE COURT:  The government.

5          MS. THOMPSON:  Do you have something?

6          MR. BASILE:  Your Honor, I just had a couple of

7    things, and just to respond to -- just to remind the Court

8    that all of the images on the computer, except for a few, had

9    been deleted, and there is no evidence of any distribution or

10   attempt to distribute any of it.

11          And I would ask the Court, if possible, for a

12   sentencing that he could be placed as close to here as

13   possible.  His parents, his mom is about 80 years old, she is

14   elderly, and that would allow them to be able to visit as much

15   as possible.  So if the Court could make a recommendation, I

16   would request that.

17          MS. THOMPSON:  Thank you, Your Honor.  There was one

18   image on that computer that was put in the trial evidence at

19   trial that was not deleted.  Also, with regard to the deleting

20   of images, it may just be coincidence.  It may just be good

21   luck on the part of the defendant.  We will never know.  Only

22   he knows.

23          But I can tell the Court this.  He was on probation

24   for sexually touching a seven-year-old girl in the bathtub.

25   Unfortunately, he got deferred prosecution on that matter in

1    Kendall County.

2              While he was on probation, on October 13 of 2007, he

3    was ordered to take a polygraph examination.  He failed that

4    polygraph examination.  All of the images, most of the images

5    on his computer were deleted October 16th of 2007.  Let's see.

6    I failed the polygraph.  Something may happen.  I am going to

7    go home and erase everything I had.  And then probation visits

8    him and then the search warrant is conducted on October 18th

9    of 2007.

10             Coincidence?  Maybe.  I don't think so.  So to say I

11   have been downloading child pornography, I like it, and then I

12   feel bad and I delete it, that is probably true.

13             Did he delete that quantity of child pornography

14   because he felt bad about it and didn't want to participate in

15   it anymore?  Or is it because he failed a polygraph

16   examination?

17             Here is the problem.  Steven Mouton has been

18   sexually preying on children for most of his life, for the

19   last 33 years of his life.  When he says he owes an apology to

20   his wife and his daughter, he owes a few more apologies.

21             There is another little girl that he started

22   sexually abusing when she was five.  It only stopped when she

23   turned 18 and moved out of the house.  He owes her an apology.

24             There is another little girl that was in his bathtub

25   when she was sexually touched by him.  He owes her an apology.

1          Everything in this case suggests that he will -- if

2     given an opportunity, he will continue to prey upon children.

3     He has for most of his life.

4          He goes on to talk about the wonderful relationship

5     he had with the victim in this case, and that most fathers

6     would envy it.  A lot of what he is describing, the time they

7     spent together and the things they did sounds like grooming.

8     Is it self-less on his part?  Probably not.

9          When he says, "She loved me and she didn't complain

10    and she liked this," this little girl didn't know this was

11    wrong.  She didn't know it was wrong, because he told her it

12    was okay.

13         He said that this is what dads do with daughters, so

14    she didn't even know that that wasn't happening with her other

15    friends.  She didn't know that that wasn't part of a normal

16    father-daughter relationship.

17         He helped her with her homework.  He taught her how

18    to play the violin.  He did wonderful things for her.  He also

19    killed who she could have been.

20         This little girl is unbelievably bright and talented

21    and funny, and he ruined that.  He took away the potential

22    that she had.

23         He says, "I denied her nothing."  That is

24    incredible.  He denied her her innocence.  He denied her her

25    privacy.  He denied her the right just to be a little girl,

1    and he still doesn't see it.

2           He thinks he should get an award for father of the

3    year.  Look at all of the wonderful things I did for her.  He

4    still can't see what he took away from this child.  Nothing

5    that he has done in the past nor nothing he can do in the

6    future will make up for the tremendous harm that this child

7    has suffered.

8           She is not here today, and there isn't anybody here

9    to speak for her.  I have talked with the family, and I would

10   like to speak on their behalf.  Part of the reason that she

11   can't be here, and that someone can't stand up and tell you

12   how this has affected her, is that we don't even know yet.

13          In most cases, when children are sexually abused,

14   there is a process of disclosure.  As you know, some children

15   never disclose that they were abused.  Some people disclose to

16   a trusted individual, and they determine at what point in

17   their life they are going to disclose, and it is a whole

18   process of how this happens.

19          Unfortunately, in this case, we never gave that

20   little girl a chance to do that.  This was thrust upon her,

21   because we found the images of the worst moments of her life,

22   and we confronted her and told her she was a victim, because

23   he told her that was normal father-daughter behavior.

24          She didn't like it, but she didn't know it was

25   wrong.  It is like when a child has a runny nose, I wipe his

1    nose.  He doesn't like it.  It hurts him, but I am his mom,

2    and so it is probably okay that I am wiping his nose.

3              That is all I can equate to this.  She didn't like

4    what was happening, but she didn't know it was wrong because

5    he convinced her otherwise.

6              She also didn't have the opportunity to go through

7    the process of disclosure, because we came to her and said,

8    "Hey, we found pictures of you.  We know you have been

9    sexually abused."

10             She is having a hard time dealing with this.  She

11   doesn't know yet how this will affect her.  We can tell you

12   from the studies that have been done, this will affect her

13   throughout her life.  This will affect her as she goes through

14   puberty.  This will affect her when she starts dating.  This

15   will affect her when she gets married.  This will affect her

16   when she has children.  This will affect her at all of the

17   times in her life that are supposed to be wonderful.  That is

18   when this will affect her, and probably many more -- we don't

19   know that yet.

20             He has denied her not only her childhood, but a part

21   of her future.  And he doesn't get that.

22             He said he tried to portray a good guy image for his

23   daughter.  Well, I have gone on about how he told her that

24   this was okay.

25             When he says, "I have never done anything to

1    intentionally hurt anyone," we know that is not true.  There

2    are at least three females that have come forward and said,

3    "He sexually abused me."  Or that we know from pictures he

4    sexually abused.

5            Steven Mouton was never prosecuted for the sexual

6    abuse that he committed against his first victim.  The second

7    victim, he was given deferred prosecution in Kendall County,

8    which is what led to probation officers going out to his house

9    in this case.

10           He got leniency from Kendall County.  Had he been

11   prosecuted for those, he would be looking at a life sentence.

12   Even if he had been adjudicated guilty in the Kendall County

13   offense, he would be looking at a statutory maximum of 50

14   years, instead of 30.

15           It is significant in this case that the guidelines

16   call for a sentence of life imprisonment.  That is what is

17   supposed to happen when you do something this heinous to a

18   little girl.  You can't give him that.  The statutory maximum

19   is 30 years.

20           The government feels strongly that he has earned

21   every year of those 30 years, and that in this case, that is

22   the only fair and just sentence.

23           MR. BASILE:  Your Honor --

24           THE COURT:  Yes.

25           MR. BASILE:  -- I would disagree with the

1    interpretation of the state laws as far as 50 years.  Under

2    the new statutes, that might be correct, but the old

3    statutes -- he did in the original case, it would not apply,

4    under what they call the super sexual aggravated assault --

5              THE COURT:  Well, I am not taking into account what

6    the state system would or would not call for.

7              MS. THOMPSON:  That was under federal law, he would

8    be -- the minimum would have been 25 and the maximum would

9    have been 50 under federal law.

10             MR. BASILE:  I misunderstood.  I thought she was

11   talking about the state court.

12             THE COURT:  And that's the way I understood it as

13   well.  I only look at what is before me, and the statutory

14   minimum is 15 and the statutory maximum is 30 on Count 1.

15             Mr. Mouton, having reviewed your presentence report,

16   the Court adopts the presentence report.  Having reviewed the

17   3553(a) factors, I find that your deviant behavior has been

18   traced back to at least 1976, when you began molesting your

19   biological daughter.

20             Your daughter, at that time, was five years old and

21   that behavior continued until she left for college at age 18.

22   In 1997, you and your wife adopted a second child from China.

23   You admitted that you began taking pictures of that daughter

24   throughout a period of ten and a half years since her

25   adoption.

1        In addition to taking pictures, you sexually

2   assaulted her.  You inserted your penis and your fingers into

3   her.  In 2006, a year prior to this offense, you were

4   convicted of indecency with a child.  That was fondling your

5   seven-year-old granddaughter while that child was in the

6   bathtub.

7        Having reviewed all of the 3553(a) factors, I note

8   that you have led two different lives, one very commendable

9   and one very deviant.  In light of all of the following, I

10  sentence you on Count 1 to 30 years of imprisonment.  On Count

11  2, I sentence you to 120 months, both counts to be served

12  concurrently.

13       Upon release from imprisonment, you will be placed

14  on supervised release for a period of 20 years on each of

15  Counts 1 and 2, to be served concurrently.

16       The Court orders you to pay a fine in the amount of

17  $5,000 in each of Counts 1 and 2, for a total of $10,000.  The

18  Court orders you to pay a special assessment of $100 on both

19  Counts 1 and 2, for a total of $200.

20       Upon release from imprisonment, you will be placed

21  on supervised release, as I said, for a term of 20 years.

22  While on supervised release, you will comply with the

23  mandatory and standard conditions adopted by the Court on

24  May 27, 2004.

25       In addition to those conditions, the following shall

1    apply.  You shall attend and participate in mental health

2    treatment programs as approved and directed by your probation

3    officer.

4              You shall not associate with any children or child

5    under the age of 18, except in the presence and supervision of

6    an adult, specially designated in writing by the probation

7    officer.

8              You shall reside in a residence approved in advance

9    by the probation officer.  Any changes in residence must be

10   preapproved by your probation officer.  You shall not reside

11   within 1,000 feet of any real property comprising a public or

12   private elementary, vocational or secondary school.

13             You will refrain from purchasing any sexually

14   oriented or stimulating materials involving children.  If you

15   possess a computer or any other kind of electronic or digital

16   device, you will make those devices available for the

17   probation officer for his or her inspection.

18             If you are required to register under the Sex

19   Offender Registration and Notification Act, you will submit in

20   person your property, house, computers and any other

21   electronic communication devices or storage devices to search

22   at any time, with or without a warrant, by a law enforcement

23   or probation officer.

24             You shall register with the sex offender

25   registration agency in any state where you may reside and be

1    employed or carry on a vocation.

2              You have the right to appeal the sentence imposed in

3    this case.  The Court will order that the presentence report

4    be sealed and made a part of the record.  Should application

5    of the guidelines be appealed, the report will be made

6    available for review for appellate purposes only.

7              I will make a recommendation that you be placed in a

8    facility as close to San Antonio, Texas.

9              Anything further?

10             MS. THOMPSON:  Yes, Your Honor.  The government

11   would respectfully ask that you issue an order of forfeiture

12   and that it be made part of the final judgment in this matter.

13             THE COURT:  I don't remember a forfeiture issue in

14   this case.  What are the items to be forfeited?

15             MS. THOMPSON:  The real property where the crime

16   took place, and I believe some computer equipment was added on

17   to that.  At the time of the conviction, a temporary order of

18   forfeiture was granted.

19             THE COURT:  Yes.

20             MR. BASILE:  That is correct, Your Honor.  At the

21   jury trial, you did that.

22             THE COURT:  I recall that now.  That will be granted

23   as well.

24             MS. THOMPSON:  Thank you, Your Honor.

25             MR. BASILE:  May we be excused, Judge?

```
 1              THE COURT:  Yes.

 2              *-*-*-*-*-*-*-*

 3   UNITED STATES DISTRICT COURT )

 4   WESTERN DISTRICT OF TEXAS     )

 5              I certify that the foregoing is a correct transcript

 6   from the record of proceedings in the above-entitled matter.

 7   I further certify that the transcript fees and format comply

 8   with those prescribed by the Court and the Judicial Conference

 9   of the United States.

10   Date signed:  April 26, 2010.

11

12                        /s/ Karl H. Myers

13                        _____
                          KARL H. MYERS, CSR, RMR, CRR
                          Official Court Reporter
14                        655 East Durango Blvd., Suite 315
                          San Antonio, Texas 78206
15                        (210) 212-8114

16

17

18

19

20

21

22

23

24

25
```